# In the United States Court of Federal Claims

No. 11-299C

(Filed Under Seal: July 8, 2011)

(Reissued for Publication: July 13, 2011)[1]

| | |
|---|---|
| ******************************************<br><br>CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC.,<br><br>                     Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>                     Defendant,<br><br>and<br><br>ALASKA STRUCTURES, INC.,<br><br>                     Defendant-Intervenor.<br>****************************************** | Bid Protest; Required Competition for Contracts of Unusual and Compelling Urgency; 10 U.S.C. § 2304(e); FAR 6.302-2(c)(2); Mootness Doctrine Exception for Circumstances That Are Capable of Repetition, Yet Evading Review; Delay in Public Notification of Sole Source Award; FAR 6.305(b); FAR 1.102-2(b). |

*Paul F. Khoury*, with whom were *Brian G. Walsh* and *Tracye Winfrey Howard*, Wiley Rein LLP, Washington, D.C., for Plaintiff.

*Douglas T. Hoffman*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Bryant G. Snee*, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Richard J. Conway*, with whom was *Pablo A. Nichols*, Dickstein Shapiro LLP, Washington D.C., for Defendant-Intervenor.

---

[1] The Court issued this opinion under seal on July 8, 2011, and gave the parties until July 15, 2011 to submit any proposed redactions of competition-sensitive, proprietary, confidential or other protected information. Pursuant to the Court's request, the parties submitted proposed redactions, which the Court accepted. The redactions are indicated by [ . . . ].

OPINION AND ORDER

WHEELER, Judge.

In this bid protest, Plaintiff California Industrial Facilities Resources, Inc. (CIFR) challenges the Government's award of a sole source contract for sixteen 50-man bare base shelter systems to Alaska Structures, Inc. (AKS). The bare base shelter systems are large tent-like structures that serve as living quarters for United States military troops arriving in Afghanistan. CIFR alleges that the Government violated statutory competition requirements when it failed to consider suppliers other than AKS in awarding the contract, and acted unreasonably by delaying the public posting of the sole source award until after contract performance to avoid possible bid protests. CIFR asserts that it would have submitted a proposal for the contract if given an opportunity, and that its price would have been significantly lower than the price offered by AKS.

By the time the protest was filed in this Court, AKS had nearly performed the entire contract, and the Court denied the application for a temporary restraining order (TRO). The contract is now fully performed, but CIFR nevertheless requests a declaratory judgment to prevent the Government from acting as it did here on future procurements. In response, Defendant argues that the case should be dismissed as moot because CIFR's requested relief cannot redress any actual injuries. Both Defendant and AKS also argue that the Government's actions were reasonable and in compliance with governing law.

In brief summary, the Court finds that this case is not moot because the Government's violation of statutory competition requirements for the war effort in Afghanistan is capable of repetition, and could again evade review. The challenged actions were too short in duration to be fully litigated prior to completion, and there is a reasonable expectation that the complaining party will be subject to the same actions in the future. Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 462-63 (2007); Humane Soc'y v. Clinton, 236 F.3d 1320, 1331 (Fed. Cir. 2001); Ameron, Inc. v. U.S. Army Corps of Engineers, 787 F.2d 875, 880-81 (3d Cir. 1986). The Court has jurisdiction of this matter under 28 U.S.C. § 1491(b) (2006).

On the merits, the Court finds that the Government's award of a sole source contract to AKS violated the competition requirements in 10 U.S.C. § 2304(e) (2006) and Federal Acquisition Regulation (FAR) 6.302-2(c)(2). Even when confronted with unusual and compelling urgency, the Government still must request offers from as many potential sources as is practicable. The Government was well aware that other sources would have been interested in competing for the contract, but the Government made no effort to contact any source other than AKS. The Government had 26 days between its awareness of the shelter system requirement (April 1, 2011) and the award of the contract

to AKS (April 27, 2011), and it easily could have obtained competitive prices from other sources. The Government's failure to do so was in violation of law.

The Court also finds that the Government's delay in publicly posting the Justification and Approval (J&A) of the award until after performance was done intentionally for the purpose of avoiding a bid protest, and therefore was arbitrary and capricious. Even though FAR 6.305(b) affords the Government 30 days after award to post the J&A, the Government's actions were calculated to obstruct the interests of those who might object to the sole source award. The Government must at all times strive for "maintaining the public's trust," and cannot conduct its business in a manner that undermines "integrity, fairness, and openness." See FAR 1.102-2(c). The Government did not meet this standard here. Accordingly, Plaintiff's motion for judgment on the administrative record is granted, Defendant's motion to dismiss or in the alternative for judgment on the administrative record is denied, and Defendant-Intervenor's motion for judgment on the administrative record also is denied.

## Background

On April 1, 2011, the Secretary of Defense ordered the deployment of a 690-member infantry battalion to support the Combined Joint Special Operations Task Force-Afghanistan. (Administrative Record (AR) 67.) The latest expected arrival date for this infantry battalion was June 1, 2011. Id. The United States military in Afghanistan needed sixteen 50-man bare base shelter systems to house these troops. Id. Bare base shelter systems are large tents that provide troops with space for sleep, work, and storage. (AR 267.) Two contracting officials, Lieutenant Commander Kevin B. Morris and Captain Pak Sa Dewhurst, were responsible for conducting this procurement. See AR 268. Captain Dewhurst was redeployed on April 24, 2011, and Technical Sergeant Chad Obermiller replaced him. (AR 95, 163.)

By April 2, 2011, one day after the announcement of the troop deployment, LCDR Morris already had contacted AKS and obtained a price quotation for the sixteen shelter systems. (AR 24.) LCDR Morris asked AKS for a "repeat customer discount" and received [ . . . ] price reduction. Id. He also had completed within one day 85 percent of the J&A. Id. LCDR Morris used a J&A from a previous contract to prepare the J&A for this procurement. (AR 48, 75.) When preparing the J&A, LCDR Morris and Captain Dewhurst were well aware that a sole source contract award might result in a bid protest. In an e-mail sending a draft of the J&A to LCDR Morris, Captain Dewhurst suggested that the J&A needed to be revised to avoid a protest, stating "[y]ou may need to beef up some language throughout the document. It has to be significantly stronger than the first J&A for obvious reasons." (AR 48.) Further, Patricia Babida, a senior contracting official for the CENTCOM Contracting Command, suggested a policy review of the award package because "these Alaska structures are pretty protestable items." (AR 241.)

Lt. Col. Lavonne Shingler, an Air Force Special Competition Advocate, approved the sole source J&A on April 26, 2011.  (AR 269.)  In a paragraph describing efforts to obtain competition, the J&A states that the Government contacted the Defense Logistics Agency (DLA) and the General Services Administration (GSA) on April 3, 2011, but that neither was able to meet the expedited delivery requirements for the shelter systems.  (AR 267.)  The Government explains in the J&A that it turned to two proven commercial suppliers, ADS Inc., a distributer of Alaska Structures equipment, and Alaska Structures itself.  Id.  The Government determined that, because ADS was only a distributor, it was more advantageous to contact AKS directly.  Id.  In a paragraph describing interested sources, the J&A states "[o]ther sources can provide bare base systems.  However, under the compressed timeframe because of the urgent and compelling need, extraordinary contracting methods had to be employed in order to ensure timely delivery of a functional product."  (AR 268.)  Captain Dewhurst certified that the cost to the Government would be fair and reasonable.  The J&A states that "[p]rices for this equipment are known from public sources through current price lists, catalogs and advertisements."  Id.  While the Government makes the above assertions in the J&A, there is no evidence in the Administrative Record showing that any contracting official actually contacted DLA, GSA, or ADS, or reviewed prices from any price lists, catalogs, or advertisements.

The Government also prepared the solicitation from a previous sole source contract.  (AR 25) ("The RFP being built is identical to the 1st J&A procurement.")  On April 23, 2011, the Government sent the solicitation to AKS.  (AR 98.)  On April 24, 2011, AKS submitted its proposal.  (AR 173.)  AKS's total proposed price was $8,932,692.  (AR 213.)  The Government awarded the contract to AKS on April 27, 2011. (AR 271, 272.)

Shortly after sending the award document to AKS for signature, TSgt Obermiller asked AKS's Jimmy White to supply a published company price list.  (AR 273.)  TSgt Obermiller explained that he needed the price list to substantiate that the contract price was fair and reasonable.  (AR 279.)  Mr. White replied that he could not provide the price list immediately because AKS's Vice-President was on a flight from Germany to Seattle.  (AR 276, 279.)  When AKS was unable to provide a published price list, LCDR Morris directed TSgt Obermiller to review two previous ADS price quotations for AKS products.  (AR 288.)[2]

Also on the same day as the contract award, TSgt Obermiller sent an e-mail to LCDR Morris asking for information on upcoming shelter system procurements so that TSgt Obermiller could start the solicitation early and avoid another "urgent and

---

[2]  The Court cannot fathom how the Government could satisfy itself that the AKS price for this contract was "fair and reasonable" simply by comparing it with other ADS prices for AKS products.  Seemingly, a comparison with other industry prices would have been necessary to draw any conclusion about the reasonableness of AKS's prices.

compelling" procurement. (AR 312-13.) LCDR Morris responded that he did not think there will be a "next time," but if there is, "it'll be the same timeline, less than 60 days from the time the SECDEF says execute until the troops are here on deck. Factor in the administratium [sic] involved and that will leave about 45 days (or less) from flash to bang." (AR 312.) LCDR Morris then expressed his frustration with the internal government channels of procuring shelter systems:

> I used DLA for the last buy that Capt Dewhurst was working on . . . the one that got a pre-award protest and he cancelled the solicitation. The one where we needed it all [not later than] 15APR11 to BAF. DLA processed the MIPR 15 MAR. The contract for the (8) kits was awarded 12APR . . .
>
> And the [tents have] not moved from the factory. And for that reason, I'll never use DLA again in a contingency environment.

Id. (ellipses in original). On May 2, 2011, AKS's logistics management company, [ . . . ], provided LCDR Morris and others with a delivery receipt for materials to be shipped later the same week. (AR 323.) On May 3, 2011, [ . . . ] provided LCDR Morris and TSgt Obermiller with flight information showing that the shelter systems would arrive on May 5, 2011. (AR 329.) On May 4, 2011, [ . . . ] informed the Government that the trucks with the shelter systems were on the way to the airport and on May 5, 2011, [ . . . ] stated that the shelter systems were on a flight to Afghanistan. (AR 336, 340.)

The Government publicly announced the sole source award to AKS by posting the J&A on www.fedbizopps.gov on May 4, 2011, seven days after the contract was awarded. (Pl.'s Mot. Admin Rec. 11-12; Def.'s Mot. Admin Rec. 2; Def-Intervenor's Mot. Admin Rec. 10.) On May 8, 2011, the Government received notice that another shelter system manufacturer, All Points International (API), would be filing a protest of the sole source award. (AR 345.) Upon learning this information, LCDR Morris sent an e-mail to TSgt Obermiller stating "I thought you guys would wait until the 29th day to post this [notice]." Id. LCDR Morris was referring to FAR 6.305(b), which permits the Government 30 days after contract award to post the J&A. Regarding API, LCDR Morris observed:

> This is the guy that was like a pitbull latching on to Capt Dewhurst & myself, hounding us while we went thru GSA e-Buy . . . until the protest was filed by AKS back in late Feb/Mar timeframe.
>
> We ended up cancelling the solicitation & going thru DLA. Still haven't gotten the material yet . . . but went thru DLA.

Id. (ellipses in original). On May 9, 2011, LCDR Morris sent an e-mail to AKS and [ . . . ] asking for an update on the remaining contract items that were being shipped from New

Mexico. (AR 347.) LCDR Morris observed "[r]ecent events dictate the importance of getting all material flowing out of NM as soon as possible." Id. Also on May 9, 2011, TSgt Obermiller sent an e-mail to AKS stating that the contract has been officially protested and AKS must stop work. (AR 348.) AKS's Jimmy White responded that most of the material "has already shipped." Id. LCDR Morris informed TSgt Obermiller that the Government had received 89 of 96 tents and all 96 environmental control units. (AR 349.)

On May 13, 2011, API filed a complaint in this Court, along with an application for a TRO and a motion for a preliminary injunction. AKS, the awardee, filed a motion to intervene. CIFR had filed a bid protest at the Government Accountability Office (GAO) on May 9, 2011 challenging the sole source award to AKS, but understood that its GAO protest would be dismissed due to API's protest in this Court. See 4 C.F.R. § 21.11(b). Thus, CIFR brought its protest into Court and moved to intervene on Plaintiff's side. The Court granted both motions to intervene on May 16, 2011. The same day, the Court heard oral argument on API's application for a TRO, which the Court denied because contract performance was almost completed, and because the Court must afford due regard to the interests of national defense. See 28 U.S.C. § 1491(b)(3) (2006).

On May 24, 2011, after its TRO application had been denied, API filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A). On May 25, 2011, Defendant filed the Administrative Record. On May 26, 2011, the Court held a status conference in which CIFR confirmed that it wished to pursue the protest on its own. CIFR filed a complaint and motion for judgment on the administrative record on June 1, 2011. The Court then dismissed API from the case and CIFR replaced API as Plaintiff. On June 8, 2011, Defendant filed its combined motion to dismiss pursuant to Rule 12(b)(1), cross-motion for judgment on the administrative record, and response to Plaintiff's motion for judgment on the administrative record. AKS also filed its response and cross-motion for judgment on the administrative record. CIFR filed its response to Defendant's and Defendant-Intervenor's motions on June 13, 2011. The Court heard oral argument on June 20, 2011.

## Discussion

### A. Subject Matter Jurisdiction

The Tucker Act confers upon this Court jurisdiction over bid protests "in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b). In this case, Defendant argues that the Court lacks jurisdiction because the contract has been performed and the case is moot. "[F]ederal Courts are without power to decide questions that cannot affect the rights of litigants in the case before them." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). A case is moot if intervening events render it impossible to grant any effective relief to the

prevailing party. Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1372 (Fed. Cir. 2000). If a case becomes moot, there is no justiciable "case or controversy" for the Court to decide, and the Court is divested of subject matter jurisdiction. Cal. Indus. Facilities Res. v United States, 80 Fed. Cl. 633, 639 (2008). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If the defendant questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. DataMill, Inc. v. United States, 91 Fed. Cl. 740, 750 (2010). The Court may examine relevant evidence to decide any factual disputes. Id.

A notable exception to the mootness doctrine occurs when the action complained of is capable of repetition, yet might again evade review. Humane Soc'y, 236 F.3d at 1331. This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Fed. Election Comm'n, 551 U.S. at 462 (internal quotation omitted). For the second part of this test, there must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same party. Murphy v. Hunt, 455 U.S. 478, 482 (1982).

This exception to the mootness doctrine has been applied in bid protest cases. See Ameron, Inc. v. U.S. Army Corps of Engineers, 787 F.2d 875, 881 (3d Cir. 1986) (applying the mootness exception to constitutional issues where the underlying GAO bid protest had been resolved, because plaintiff likely would face similar issues again); Valley Constr. Co. v. Marsh, 714 F.2d 26, 28 (5th Cir. 1983) (applying the mootness exception to Army Corps of Engineers minority set-aside contracts, where the same circumstances could arise again and evade review).[3]

The present case falls squarely within the mootness exception for claims capable of repetition, yet evading review. As is apparent from the record, a contract for bare base shelter systems can be performed within a matter of days. The Government awarded the contract to AKS on April 27, 2011, and by May 5, 2011, the military had received 89 of 96 tents and all 96 environmental control units. (AR 271, 340, 349.) CIFR alleges that it

---

[3] Other procurement cases have declined to apply the exception to the mootness doctrine, demonstrating that each case must be examined on its own unique facts. See Columbia Rope Co. v. West, 142 F.3d 1313, 1317 (D.C. Cir. 1998) (holding that even if the length of the contract was too short to allow effective challenge, there was no expectation that the contractor would suffer the same injury again); James Luterbach Contr. Co., Inc. v. Adamkus, 781 F.2d 599, 602-604 (7th Cir. 1986) (holding that challenge to a water treatment plant contract did not fit the mootness exception because the plant took two years to build and the possibility of repetition was too speculative); Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32, 34-35 (2005) (holding that plaintiff's challenge to its suspension from bidding on contracts does not evade review because the litigation could be completed before the suspension ends).

did not know about the sole source procurement until May 4, 2011, the day of public notification on www.fedbizopps.gov. If the protester does not learn of the procurement until the contract has been performed, the sole source award would evade any review. Thus, a reasonable expectation exists that CIFR would suffer the same injury again. CIFR is a frequent bidder for Government shelter system contracts. There is a reasonable probability that the military again will need shelter systems in Afghanistan on a compressed timeframe. In this instance, upon learning of the troop deployment, the Government immediately decided to procure the shelter systems through a sole source award to AKS. The Government never even considered obtaining competitive price quotations from other sources. If left unchecked, the Government likely would follow the same course again.

Defendant's counsel agreed at oral argument that this shelter system procurement is capable of repetition and of evading review. In response to the Court's inquiry on whether cases like this one may be subject to the mootness exception, Defendant's counsel stated: "there certainly is the opportunity for capable of repetition – for the combination of capable of repetition and evading review." (Tr. Oral Arg., June 20, 2011, at 27.)

### B. Standard of Review

In reviewing motions for judgment on the administrative record, the Court must determine whether "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005)). Resolving motions for judgment on the administrative record is "akin to an expedited trial on 'the paper record'" CHE Consulting, Inc. v. United States, 78 Fed. Cl. 380, 387 (2007), aff'd, 552 F.3d 1351 (Fed. Cir. 2008). The Court may make findings of fact where necessary. Bannum, Inc., 404 F.3d at 1356.

The Court reviews bid protests under the standards set out in the Administrative Procedure Act (APA), 5 U.S.C § 706. See 28 U.S.C. § 1491(b)(4). Under the APA, the Court will set aside the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)). A sole source contract is subject to judicial relief if (1) the award lacked a rational basis; or (2) the procurement process involved a violation of a statute, regulation, or procedure. Emery Worldwide Airlines v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2000). The protester also must establish prejudice by showing there is a substantial chance it would have received the contract if not for the errors in the procurement process. Bannum, 404 F.3d at 1353. If a protester succeeds in establishing prejudicial error, the court may grant the relief it

considers proper, including declaratory and injunctive relief.  28 U.S.C. § 1491(b)(2); Lumetra v. United States, 84 Fed. Cl. 542, 549 (2008).

      C.  Award of Sole Source Contract to Alaska Structures

CIFR argues that the Government violated the Competition in Contracting Act (CICA) by failing to consider other sources besides AKS.  CICA requires, with certain exceptions, that the head of an agency conducting a procurement of property or services "obtain full and open competition."  10 U.S.C. § 2304(a); FAR 6.101.  Subsection (c) of the statute provides for exceptions from the competition requirement, including when "the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals."  § 2304(c)(2).  However, even when an agency limits the number of sources because of unusual and compelling urgency, CICA requires the agency to "request offers from as many potential sources as is practicable under the circumstances."  § 2304(e); see also FAR 6.302-2(c)(2).  CICA requires that any justification for a sole source award include "a determination that the anticipated cost will be fair and reasonable."  § 2304(f)(3)(C); see also FAR 6.303-2(b)(7).

In the present case, the Court does not question that the Government's need for shelter systems in Afghanistan was of an unusual and compelling urgency.  Yet, the Government's contracting officials were aware that there were other providers of shelter systems.  The J&A stated that "[o]ther sources can provide bare base systems."  (AR 268.)  See also Tr. Oral Arg., June 20, 2011, at 33 (Defendant's counsel acknowledged "it is certainly viable from this record that these contracting officers were well aware of other tent providers.")  By April 2, 2011, one day after becoming aware of the shelter system requirement, the Government already had solicited a price quotation from AKS.  There is no explanation in the Administrative Record of why the Government could not have contacted other shelter system manufacturers just as quickly.  A 26-day period between notice of the requirement and contract award would have afforded an ample opportunity to obtain price quotations from other sources.  Although the Government states in the J&A that contracting officials contacted DLA, GSA, and ADS, the distributor of AKS products, there is no evidence in the Administrative Record actually showing that these contacts were made.  Even more importantly, there is no evidence that the Government contacted CIFR, API, or any other shelter system supplier, to obtain competitive price quotations.  The failure to take these actions violated the requirement in 10 U.S.C. § 2304(e) and FAR 6.302-2(c)(2) that the Government request offers from as many sources as practicable.

Further, the sole source award to AKS lacked justification because the Government's contracting officials failed to determine that the contract price was fair and reasonable.  Although Captain Dewhurst certified on April 22, 2011 in the J&A that the

price was "fair and reasonable" and stated that "prices for this equipment are known from public sources through current price lists, catalogs and advertisements," (AR 268), TSgt Obermiller asked AKS's Jimmy White on April 27, 2011 if AKS had a published price list for its products.  (AR 273.)  TSgt Obermiller did not request this information from AKS *until after the price reasonableness already had been certified in the J&A and the contract award document had been sent to AKS for signature*.  The conclusion is inescapable that the Government had no real concern about the price it would pay to AKS, and simply was attempting to pad its file with supporting price data.  The Government did not even request or review any price information available from other shelter system suppliers.

CIFR was prejudiced by the Government's procurement errors.  If given an opportunity, CIFR would have submitted a proposal for the shelter system procurement.  CIFR asserts that it had the supplies on hand to provide sixteen bare base shelter systems.  (Compl. Brooke Declaration ¶ 8.)  In fact, the Government previously had awarded other shelter system contracts to CIFR on solicitations designated as "brand name or equal," seeking AKS products or their equivalents.  Id. ¶ 3, Ex. 2.  CIFR also states that it could have provided the shelter systems at a lower price.  Id. ¶¶ 6-7.  The Court finds that, if the Government had complied with 10 U.S.C. § 2304(e) and FAR 6.302-2(c)(2), CIFR would have submitted a proposal for the shelter system procurement, and would have had a substantial chance of receiving the contract award.

D.  Delay in Posting the J&A

CIFR also argues that the Government acted arbitrarily and capriciously by waiting until after contract performance to post the J&A on www.fedbizopps.gov to avoid a possible bid protest.  Defendant's counsel conceded at oral argument that if the contracting officials waited to post the J&A in order to evade review, it would be inappropriate:

> THE COURT:  Mr. Hoffman, would you agree with me that if there were any gamesmanship with the posting of the J&A even though it was less than 30 days, do you think that would be inappropriate?
>
> MR. HOFFMAN:  Your Honor, I think that if there was gamesmanship with the posting of the J&A and it was proven that it was to – that it was meant in order to ensure delivery and evade review, then, yes, I would think that that probably would fall under  -- would be inappropriate.

(Tr. Oral Arg., June 20, 2011, at 45.)

The Court finds from the Administrative Record that the Government's contracting officials intentionally waited until they knew the contract was almost fully

performed before posting the J&A.  On May 3, 2011, AKS's logistics company, [ . . . ], provided LCDR Morris and TSgt Obermiller with flight shipping data, showing that most of the shelter systems would arrive in Afghanistan on May 5, 2011.  (AR 329.)  On May 4, 2011, the day of the J&A posting, [ . . . ] informed LCDR Morris and TSgt Obermiller that the trucks with the materials were on their way to the airport for flight build up.  (AR 336.)  LCDR Morris indicated that the delay until the day before the actual shipment was for the purpose of avoiding a bid protest.  After API notified the Government that it would protest the procurement, LCDR Morris stated in an e-mail "I thought you guys would wait until the 29th day to post this."  (AR 345.)  The following day, LCDR Morris sent an e-mail encouraging AKS to ship the remaining shelter systems immediately, stating "[r]ecent events dictate the importance of getting all material flowing out of NM as soon as possible."  (AR 347.)  By the time work was stopped due to the filing of a bid protest, AKS had shipped 89 of 96 tents and all 96 environmental control units.  (AR 349.)

The law permits an agency to post the public notice of a sole source award made because of unusual or compelling urgency within 30 days after contract award.  10 U.S.C. § 2304(l)(1)(B); FAR 6.305(b).  In deciding when to post a J&A, the agency should not intentionally delay the posting, as it did here, as a means of avoiding potential bid protests.  FAR 1.102-2(c) requires government officials to "conduct business with integrity, fairness, and openness," and to thereby "[maintain] the public's trust."  This provision comes into play in determining the reasonableness of government action when procuring officials engage in gamesmanship to avoid any review of an improper sole source award.  In other circumstances, the application of FAR 1.102-2(c) to sustain a bid protest may be debatable.  See Castle-Rose, Inc. v. United States, No. 11-163C, 2011 WL 255087, at *14-15 (Fed. Cl. June 23, 2011); FFTF Restoration Co., LLC v. United States, 86 Fed. Cl. 226, 237-38 (2009); Info. Scis. Corp. v. United States, 85 Fed. Cl. 195, 202 (2008).  However, as a basic tenet of the FAR acquisition system, the Court is not inclined to ignore principles of integrity, fairness, and openness where they directly apply to government actions.  The Court finds that, even though the posting of the J&A technically was within the 30-day period allowed by FAR 6.305(b), the conduct complained of was arbitrary and capricious, and cannot be condoned in any reputable procurement system.

Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is GRANTED.  The Government violated 10 U.S.C. § 2304(e) and FAR 6.302-2(c)(2) by failing to request as many offers as is practicable under the circumstances.  The Government's conduct in delaying the posting of the J&A to avoid possible bid protests was arbitrary and capricious. Defendant's motion to dismiss, or in the alternative for judgment on the administrative record is DENIED, and Defendant-Intervenor's

motion for judgment on the administrative record is DENIED.  The clerk is requested to enter this declaratory judgment for Plaintiff.  No costs.

On or before July 15, 2011, counsel for the parties shall carefully review this opinion for any competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication.  Counsel are requested to minimize their requested redactions so that the Court may publish as much of the decision as possible.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge